## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA FOLAJTAR, | : | |
| | : | Civil Action No. 18-2717 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| JEFFERSON B. SESSIONS, III, | : | |
| Attorney General of the United States, *et al*. | : | |
| | : | |
| Defendants. | : | |

## FEDERAL DEFENDANTS' MOTION TO DISMISS

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Jefferson B. Sessions, III, Attorney General of the United States, Thomas E. Brandon, Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Christopher A. Wray, Director of the Federal Bureau of Investigation, and the United States ("Federal Defendants") respectfully move this Court to dismiss with prejudice Plaintiff's claim against the Federal Defendants. The parties conferred concerning the substance of this motion on Monday, August 20, 2018.

The grounds in support of this Motion are fully set forth in the accompanying Memorandum of Law, which is incorporated herein by reference.

Dated: August 27, 2018

Respectfully submitted,

WIILLIAM M. McSWAIN
United States Attorney

 /s/ Susan R. Becker for GBD
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

 /s/ Paul J. Koob
PAUL J. KOOB
Assistant United States Attorney
615 Chestnut St., Suite 1250
Philadelphia, Pennsylvania 19106
(215) 861-8432
paul.koob@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA FOLAJTAR, | : |
|     Plaintiff, | : Civil Action No. 18-2717 |
| v. | : |
| JEFFERSON B. SESSIONS, III, Attorney General of the United States, *et al*. | : |
|     Defendants. | : |

**FEDERAL DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF THEIR MOTION TO DISMISS**

Plaintiff Lisa Folajtar, a federal felon who pleaded guilty to filing a false tax return, seeks a court order that 18 U.S.C. § 922(g)(1), the felon-in-possession statute, is unconstitutional as applied to her. If successful, Folajtar would be the first federal tax felon to achieve relief under the Second Amendment from the prospective application of 18 U.S.C. § 922(g)(1). Because Folajtar pleaded guilty to a federal felony, she is categorically excluded from the class of citizens entitled to possess a firearm. Accordingly, the Court should dismiss this action.

**STATUTORY BACKGROUND**

"Enacted in its earliest incarnation as the Federal Firearms Act of 1938, [18 U.S.C. § 922(g)(1)] initially covered those convicted of a limited set of violent crimes such as murder, rape, kidnapping, and burglary, but extended to both felons and misdemeanants convicted of qualifying offenses." *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011), *cert. denied*, 132 S. Ct. 1538 (2012) (citations omitted); *see* Federal Firearms Act, ch. 850, §§ 1(6), 2(f), Pub. L. No. 75-785, 52 Stat. 1250, 1250-51 (1938). In 1961, Congress amended this Act to prohibit "any person . . . convicted of a crime punishable by imprisonment for a term exceeding one year" from "receiv[ing] any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." *See* An Act to Strengthen the Federal Firearms Act, Pub. L. No. 87-342,

75 Stat. 757 (1961); H.R. Rep. No. 87-1202, at 4-5 (1961). Congress introduced the amendment at the specific request of the Attorney General as "an integral part of an anticrime legislative program" in response to the "exploding crime rate" of recent years. H.R. Rep. No. 87-1202, at 2. Its purpose was to "better assist local authorities in the common assault on crime" and to "make it more difficult for the criminal elements of our society to obtain firearms." *Id.* These prohibitions are codified at 18 U.S.C. § 922(g)(1), which, as amended, prohibits "any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" from "possess[ing] in or affecting commerce, any firearm or ammunition."

## FACTUAL BACKGROUND[1]

On May 13, 2011 Folajtar pleaded guilty to filing a false tax return, a violation of 26 U.S.C. § 7206(1). (Compl. ¶ 8) Section 7206(1) provides

> [a]ny person who . . . [w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 . . ., or imprisoned not more than 3 years, or both, together with the costs of prosecution.

After taking her guilty plea, the Honorable James Knoll Gardner sentenced plaintiff to three years' probation, including three months of home confinement. (*See* Exhibit A to Plaintiff's Complaint ("Compl.") at pp. 21-22) Judge Gardner also ordered Folajtar to "wear an electronic monitoring device" (*id.* at 22) and to pay a $10,000.00 fine and a $100.00 assessment, (*id.* at 24). Folajtar also paid a total of $257,796.39 in back taxes, interest, and penalties to the Internal

---

[1] The United States recites the facts as relayed in the Complaint and does not concede the accuracy or completeness of Folajtar's allegations.

Revenue Service. (*See* Transcript Excerpt of defendant Folajtar's sentencing hearing, Sept. 9, 2011, p. 37:10, attached here as Exhibit A).[2]

Folajtar filed this as-applied Second Amendment Challenge on June 27, 2018. Compl. at 1. Folajtar now claims that her criminal counsel "never advised [her] of the loss of her Second Amendment rights" as a result of her guilty plea. (Compl. ¶ 8.) But Folajtar acknowledged at the time of her sentencing that she would suffer the loss of certain rights: "Publicly disgraced by her acts, she will stand as a convicted felon with the loss of rights that follow that status." (*See* Excerpt of defendant Folajtar's Sentencing Memorandum, Case No. 11-175-01, docket entry 13, attached hereto as Exhibit B.)[3]

## I.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). In reviewing a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the complaint, but disregards legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. Dismissal is appropriate under Rule 12(b)(6), if the Complaint does not "contain sufficient factual matter, accepted as true" to state a plausible claim for relief as a matter of law. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009).

---

[2]   Folajtar references her past federal conviction in the Complaint, and the Court may consider on a 12(b)(6) motion any "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).
[3]   *See* footnote 2, *supra*.

3

## II. ARGUMENT

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, after determining that the Second Amendment conferred an individual right to keep and bear arms, 554 U.S. 570, 595 (2008), the Supreme Court emphasized that the "right secured by the Second Amendment is not unlimited" and that the "core" right of the Second Amendment is the defensive use of arms by "*law-abiding, responsible citizens*." *Id.* at 626, 634-35 (emphasis added). Although the Supreme Court declined to "undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment," it cautioned that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]" *Id.* at 626-27. Such "regulatory measures" are "presumptively lawful." *Id.* at 627 n.26; *accord McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010).

### A. Persons who commit serious crimes lack Second Amendment rights.

Applying *Heller*, the Third Circuit adopted a two-step inquiry for analyzing Second Amendment claims. First, the court must consider "whether the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *See Binderup v. Att'y Gen. of the U.S.*, 836 F.3d 336, 346 (3d Cir. 2016) (en banc) *cert. denied sub nom. Sessions v. Binderup*, No. 16-847, 2017 WL 2722469 (U.S. Jun. 26, 2017), and *cert. denied sub nom. Binderup v. Sessions*, No. 16-983, 2017 WL 2722471 (U.S. Jun. 26, 2017) (citing *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010)). If it does not, the inquiry stops and "the challenged law must stand." *Id.* If the challenger meets step one, however, the court must apply intermediate scrutiny to the challenged statute. *Id.*

4

At this first stage, the burden is on the challenger to "(1) identify the traditional justifications for excluding from Second Amendment protections the class of which he appears to be a member . . . and then (2) present facts about himself and his background that distinguish his circumstances from those of persons in the historically barred class[.]" *Id.* (citing *United States v. Barton*, 633 F.3d 168, 173-74 (3d Cir. 2011)). The first stage of the analysis determines whether the challenger is part of the "unvirtuous" citizenry that may be constitutionally prohibited from possession of firearms. *Binderup*, 836 F.3d at 348 (citing *United States v. Skoein*, 614 F.3d 638, 640-41 (7th Cir. 2010)).

The Second Amendment's guarantee of an individual right to bear arms does not extend to convicted felons. *See Binderup*, 836 F.3d at 347. The court in *Binderup* clarified the first hurdle of step one by defining the traditional justification for excluding convicted felons from Second Amendment protections. 836 F.3d at 348. The court identified the justification, which "dates back to our founding era," that some criminal offenders were "'unvirtuous' because they committed serious crimes." *Id.* at 349. "[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *Id.* at 348 (citing *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010)). As one commentator observed, "[t]he average citizen whom the Founders wished to see armed was a man of republican virtue." David Yassky, *The Second Amendment: Structure, History, & Constitutional Change*, 99 MICH. L. REV. 588, 626 (2000). Thus, "[i]n the parlance of the republican politics of the time, these limitations were sometimes expressed as efforts to disarm the 'unvirtuous.'" *Binderup*, 836 F.3d at 348 (citation omitted). Persons who are unvirtuous because they have committed a serious crime "forfeit the right to

5

possess firearms much the way they 'forfeit other civil liberties, including fundamental constitutional rights.'" *Id.* at 349 (quoting *Barton*, 633 F.3d at 175).

Serious crimes can be, and often are, nonviolent. "People who have committed or are likely to commit 'violent offenses'—crimes 'in which violence (actual or attempted) is an element of the offense,'—undoubtedly qualify as 'unvirtuous citizens' who lack Second Amendment rights." *Id.* at 348 (citation omitted). The Supreme Court recognized, however, "longstanding prohibitions on the possession of firearms by felons," not just violent felons. *Id.* (citation omitted). The category of unvirtuous citizens is "thus broader than violent criminals; it covers any person who has committed a serious criminal offense, violent or nonviolent." *Id.* (citation omitted). So, people who have "committed a serious criminal offense, violent or nonviolent" may lawfully lose their Second Amendment right to bear arms. *Id.* at 348-49. At the first step of the *Marzzarella* analysis, "*only* the seriousness of the purportedly disqualifying offense determines the constitutional sweep of [ ] 922(g)(1)." *Binderup*, 836 F.3d at 350 (emphasis added).

### B. Because of her felony, Folajtar faces an "insurmountable" burden to distinguish herself from the class of felon excluded from lawful firearm possession.

The challenger's showing at the first stage "must . . . be strong. That's no small task . . . . And in cases where a statute by its terms only burdens matters (*e.g.*, individuals, conduct, or weapons) outside the scope of the right to arms, [the burden] is an impossible one." *Id.*; *see also Holloway v. Sessions*, 275 F. Supp. 3d 505, 513 (M.D. Pa. 2017) (citing *Binderup*, 836 F.3d at 351) ("Courts must presume that any offense within the ambit of § 922(g)(1) is disqualifying unless the challenger offers a 'strong reason' to conclude otherwise.").

While any plaintiff who pursues a Second Amendment challenge faces a high burden, that burden may be "insurmountable" when the challenger's predicate offense is labeled a felony. *Id.* at 353 n.6. "When a sovereign has labeled the crime a felony, it represents the sovereign's determination that the crime reflects 'grave misjudgment and maladjustment[.];" *Hamilton v. Pallozzi*, 848 F.3d 614, 629 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 500 (2017); *see also Binderup*, 836 F.3d at 353 n.6 (noting "[o]ur decision is limited to the cases before us, which involve *state-law misdemeanants* bringing as-applied Second Amendment challenges to § 922(g)(1) This is important because when a legislature chooses to call a crime a misdemeanor, we have an indication of non-seriousness that is lacking when it opts instead to use the felony label.") (emphasis added). Therefore, a court need not conduct an exhaustive analysis of the historical reasons for exclusion when the challenger's predicate crime is labeled a felony. *Hamilton*, 848 F.3d at 629; *see also Binderup*, 836 F.3d at 353 n.6; *see also United States v. Pruess*, 703 F.3d 242, 246-47 (4th Cir. 2012); *cf. King v. Sessions*, No. 17-884, 2018 WL 3008527, at **5-6 n.2 (E.D. Pa. Jun. 15, 2018) (eschewing the two-step analysis when faced with a challenger's past federal felony: "The classification of [King's] offenses as felonies, as well as the extensive penalties associated with them, clearly indicate that Congress considered these violations to be serious.") (citation omitted). Rather, a sovereign-labeled felony conviction "necessarily removes one from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment[.]" *Hamilton*, 848 F.3d at 626.

  **C.** **Folajtar's felony criminal history categorically excludes her from the class of virtuous citizens entitled to firearms possession.**

Folajtar cannot meet her "insurmountable," (*Binderup*, 836 F.3d at 353 n.6 ) burden under the first stage of the *Binderup*/*Marzzarella* test because her guilty plea for filing a false tax return conclusively places her within a class of individuals traditionally prohibited from

7

possessing firearms. Section 922(g)(1) is "presumptively lawful" as a "longstanding prohibition[ ] on the possession of firearms by felons." *Heller*, 554 U.S. at 626-27. Folajtar cannot rebut this presumption of lawfulness as applied to her because

> A standard felony is by all accounts a serious crime . . . Theft, fraud, manufacture of illegal drugs, bribery of officials, and identity theft are all non-violent felonies that still evince a disconcerting disregard for the law and the rights of others.

*See Medina v. Sessions*, 279 F. Supp. 3d 281, 290-91 (D.D.C. 2017) (internal quotations and citation omitted). In *Medina*, the District Court for the District of Columbia decided that a federal felon could not mount a successful as-applied challenge to section 922(g)(1) because Medina's decades old fraud conviction placed him within the category of "unvirtuous citizen[s] unable to claim the right to bear a firearm." 279 F. Supp. 3d at 290-91. Medina's crime—knowingly making a false statement to a lending institution to influence a lending decision—carried a penalty of up to 30 years in prison or $1 million in fines. These penalties revealed "a clear sign that Congress considered the crime a serious one." *Id.* (citing 18 U.S.C. § 1014).

A district court judge in the Eastern District of Pennsylvania adopted *Medina*'s reasoning in *King v. Sessions*, No. 17-884, 2018 WL 3008527, at *5 (E.D. Pa. Jun. 15, 2018) 2018 WL (citations omitted). There, Judge Schmehl found that a federal felon who pleaded guilty to previous violations of 18 U.S.C. §§ 922(a)(6) and 922(g)(1) could not distinguish himself from the general class of felons prohibited from possessing firearms because "both crimes [are] labeled felonies by the legislature and both [are] punishable by up to 10 years in prison and a fine of up to $250,000.00" 2018 WL 3008527, at *5 (citations omitted). The court explained that the felony label and penalties reflected Congress' belief that the crimes are serious. *Id.* (citing *Medina*, 279 F. Supp. 3d at 290-91).[4]

---

[4] King has appealed his case to the Third Circuit. The Federal Defendants will seek a stay of the current proceedings, pending a decision from the Third Circuit in *King v. Sessions*, 18-2571 (3d Cir.).

The Fourth Circuit has similarly held that felons are categorically excluded "from the class of 'law-abiding, responsible citizens' for the purposes of the Second Amendment, unless the challenger has received a full pardon or the basis of the conviction is declared unlawful." *See Hamilton*, 848 F.3d at 629. Folajtar pleads no facts that either limited exception applies to her. Rather, Folajtar acknowledged at the time of her conviction that she would suffer the loss of certain rights: "Publicly disgraced by her acts, she will stand as a convicted felon with the loss of rights that follow that status." (*See* Ex, A.)

Congress classified a violation of 26 U.S.C. § 7206(1) as a felony and that classification is an indication of the seriousness of the offense. *See King* 2018 WL 3008527, at *5; *see also Hamilton*, 848 F.3d at 629; *cf. United States v. Kruckel*, No. 92-611, 1993 WL 765648, at *16 (D.N.J. Aug. 13, 1993) ("The Internal Revenue Code defines the taxpaying relationship between the taxpayer and the government, and a felony violation of the Code is a serious offense against the government."). This court must heed the legislature's determination of seriousness as a disqualifying offense "unless there is a strong reason to do otherwise." *Binderup*, 836 F.3d at 351. Folajtar fails to present such a strong reason.

In support of her allegations, Folajtar cites three facts to distinguish herself from the traditional felon barred from possessing firearms: (1) her predicate offense "does not involve violence nor is there an element of violence to be proven for a conviction," (Compl. ¶ 38); (2) her sentence was "minor," (Compl. ¶ 39); and (3) the absence of a "cross-jurisdictional consensus regarding the seriousness of" filing a false tax return, (Compl. ¶¶ 40-44).

Contrary to Folajtar's assertions, these facts do not support her as-applied Second Amendment challenge to section 922(g)(1). First, "serious crimes" include both violent and nonviolent offenses, and individuals guilty of nonviolent crimes can "forfeit their right to possess

9

firearms." *Binderup*, 836 F.3d at 348-49. Second, Folajtar's summary assertion that her sentence is "minor" fails to rise to the high burden she must meet in order to receive restoration of her firearm privileges. Importantly, unlike the challengers in *Binderup*, Folajtar received a sentence that included confinement and electronic monitoring. (*See* Exhibit A to Compl. at p. 22.) Third, the Court need not perform a cross-jurisdictional nexus to reject Folajtar's challenge because her underlying conviction is a federal felony. *See King*, 2018 WL 3008527 (rejecting federal felon's as-applied Second Amendment challenge without analyzing how other jurisdictions punish the predicate offense). Unlike the crimes at issue in *Binderup*, 26 U.S.C. § 7206(1) applies consistently throughout the country, as does its felony designation provided by the United States Congress.

In support of her argument, Folajtar will likely rely on the factually and legally distinguishable case of *Hatfield v. Sessions*, -- F. Supp. 3d --, 2018 WL 1963876 (S.D. Ill. Apr. 26, 2018)[5], the only opinion in the country to restore a federal felon's gun rights. Hatfield, a former railway worker, lied on forms he submitted to the U.S. Railroad Retirement Board by claiming he was unemployed for under two months while he worked for a private company. 2018 WL 1963876, at *1. As a result, Hatfield received benefits of $1,627.73. *Id.* Hatfield pleaded guilty to a violation of 18 U.S.C. § 1001(a), served three years' probation, and paid back the $1,627.73. Unlike Hatfield, Folajtar was ordered to submit to home confinement (Compl. at 22), ordered to pay a $10,000.00 fine and a $100.00 assessment, (*id.* at 24), and required to pay a total of $257,796.39 in back taxes, interest, and penalties to the Internal Revenue Service, (Ex. B). The damage and seriousness of Folajtar's crime far exceeds that of Hatfield's.

---

[5] The Department of Justice appealed the *Hatfield* decision on June 26, 2018. That appeal awaits briefing in the Seventh Circuit.

Legally, *Hatfield* provides little support to Folajtar's anticipated claim that she satisfies step one of the *Binderup* analysis. The *Hatfield* court placed the burden on the government at the first step, 2018 WL 19363876, at 4, while Folajtar must bear this burden under *Binderup*. The court in *Hatfield* also limited the category of serious crimes to eight English common law felonies, contradicting *Binderup*'s holding that those convicted of all serious crimes are not virtuous citizens who possess Second Amendment rights. 836 F.3d at 348. The *Hatfield* court next cited the plaintiff's "spotless record," 2018 WL 1963876, at *8, contradicting *Binderup*'s holding that "the passage of time or evidence of rehabilitation" does not restore Second Amendment rights, 836 F.3d at 349. Accordingly, the law applied in *Hatfield* differs significantly from the law of the Third Circuit and it cannot support Folajtar's claim that she satisfies the first step of the *Binderup* analysis.

### III.   CONCLUSION

Folajtar's history of felony conduct removes her from the "virtuous citizenry" entitled to the right to possess firearms. Accordingly, Folajtar cannot pass the first stage of the *Binderup/Marzzarella* analysis and the Court should dismiss her complaint.

Dated: August 27, 2018    Respectfully submitted,

WILLIAM M. McSWAIN
United States Attorney

/s/ Susan R. Becker for GBD
GREGORY B. DAVID
Assistant United States Attorney
Chief, Civil Division

/s/ Paul J. Koob
PAUL J. KOOB
Assistant United States Attorney
615 Chestnut St., Suite 1250
Philadelphia, Pennsylvania 19106
(215) 861-8432
paul.koob@usdoj.gov

**CERTIFICATE OF COUNSEL**

I certify that, pursuant to the Court's June 28, 2018 Order, the parties discussed the substance of this Motion to Dismiss on August 20, 2018. The parties were unable to resolve their dispute about potential fatal problems with plaintiff's complaint during that conference.


Dated: August 27, 2018                                    /s/ Paul J. Koob
                                                         PAUL J. KOOB
                                                         Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I certify that on this day, the foregoing Motion to Dismiss and Memorandum of Law in support thereof was filed electronically and is available for viewing and downloading from the court's ECF system, and a copy was forwarded by first class U.S. mail, postage pre-paid, to:

Joshua Prince, Esq.
Adam Kraut, Esq.
646 Lenape Road
Bechtelsville, PA 19505
joshua@civilrightsdefensefirm.com
akraut@civilrightsdefensefirm.com


Dated: August 27, 2018          /s/ Paul J. Koob
                                PAUL J. KOOB
                                Assistant United States Attorney

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LISA FOLAJTAR,<br><br>           Plaintiff,<br><br>v.<br><br>JEFFERSON B. SESSIONS, III,<br>Attorney General of the United States, *et al.*<br><br>           Defendants. | Civil Action No. 18-2717 |

# [PROPOSED] ORDER

AND NOW, this _____ day of _____ 20___, upon consideration of the Federal Defendants' Motion to Dismiss, the Federal Defendants' Memorandum of Law in Support thereof, and any responses thereto, it is hereby ORDERED that the Motion is GRANTED pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. It is further ORDERED that Plaintiff's claim against the Federal Defendants is DISMISSED WITH PREJUDICE.

_____
HONORABLE JOSEPH F. LEESON, JR.
United States District Court Judge