UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA M. FOLAJTAR,<br>               Plaintiff,<br><br>               v.<br><br>WILLIAM P. BARR,[1]<br>*Attorney General of the United States*;<br>THOMAS E. BRANDON,<br>*Acting Director, Bureau of Alcohol,*<br>*Tobacco, Firearms, and Explosives*; and<br>CHRISTOPHER A. WRAY,<br>*Director of the Federal Bureau of*<br>*Investigation*<br>               Defendants. | No. 5:18-cv-02717 |

**O P I N I O N**

**Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 3—Granted**

**Joseph F. Leeson, Jr.**                                                                                                       **February 22, 2019**
**United States District Judge**

**I.      INTRODUCTION**

Plaintiff was convicted of filing a false tax return over seven years ago. Now, as a convicted felon, she is prohibited from owning firearms by federal law. A claim that the federal law is unconstitutional under the Second Amendment as applied to her has been brought.[2]

---

[1]      Pursuant to Federal Rule of Civil Procedure 25(d), Attorney General Barr, as former Acting General Whitaker's successor, is automatically substituted as the defendant in this action. *See* Fed. R. Civ. P. 25(d).

[2]      "Unlike a facial challenge, an as-applied challenge 'does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right." *Binderup v. AG of United States*, 836 F.3d 336, 345–46 (3d Cir. 2016) (quoting *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011)).

Defendants move to dismiss the complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to dismiss is granted.

## II. BACKGROUND[3]

In 2011 Lisa Folajtar pled guilty in the Eastern District of Pennsylvania to filing a false tax return, a felony subject to possible fine up to $100,000, imprisonment for up to three years, or both. The Honorable James Knoll Gardner sentenced Folajtar to three years' probation, including three months of home confinement with an electronic monitoring device, a $10,000 fine, and a mandatory $100 special assessment.[4] She completed her probation without any violations.

Folajtar wants to obtain firearms and ammunition to defend herself and her family within their home and a Federal Firearms License for Archery Addictions, LTD, a Pennsylvania corporation of which she is President. Federal law, however, bars her from owning, possessing, using, or purchasing a firearm or ammunition. After learning of this bar, Folajtar has not attempted to purchase a firearm or apply for a Federal Firearms License for Archery Addictions for fear of violating federal law. As a result, she filed the complaint in this matter seeking declaratory and injunctive relief. The Attorney General of the United States, Acting Director of

---

[3] The background information in this section is taken from the complaint and is set forth as if true. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[4] In the sentencing colloquy, Judge Gardner indicated that the "much more modest fine" of $10,000 was appropriate and a greater fine was not necessary because of the considerable financial impact of the $257,796.39 restitution payment. Tr. Sentenc. Proc. At 55:14–21, USA v. Folajtar, No. 11-cr-00175, ECF No. 19. The transcript is a matter of public record and appears in the record of Folajtar's criminal case, which she referenced in her complaint. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (internal citations and quotations omitted)).

the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Director of the Federal Bureau of Investigation, and the United States (collectively, the "Government") move to dismiss the complaint in its entirety with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## III. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for its "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Rules generally demand "only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips*, 515 F.3d at 233 (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002) (internal quotations omitted)). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## IV. ANALYSIS

The Government moves to dismiss the complaint in its entirety with prejudice. The Government argues that Folajtar seeks an unreasonable and unsupportable expansion of Second Amendment case law because Congress defined her conviction as a felony—a serious criminal offense. Folajtar argues her non-violent felony conviction is distinguished from the class of individuals historically barred from gun ownership.

After applying the relevant authority and the framework established in *United States v. Marzzarella* and confirmed in *Binderup v. Attorney General*, and for the reasons discussed below, the Court concludes that Folajtar does not state a plausible Second Amendment claim, grants the Government's motion, and dismisses this case.

### A. The Second Amendment and Challenges to the Constitutionality of Section 922(g)

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. These Second Amendment rights are not without limitations. In 2008, the United States Supreme Court considered the Second Amendment's protections and clarified that it protects the right to possess and use firearms for traditionally lawful purposes, such as self-defense within the home. *District of Columbia v. Heller*, 554 U.S. 570, 573 (2008). The Supreme Court explained, however, that the right was not unlimited and that its opinion "should not be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Heller*, 554 U.S. at 573. Two years later, in *McDonald v. City of Chicago*, the

Supreme Court repeated this assurance that its holding in *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill.'" 561 U.S. 742, 786 (2010).

Some of those "longstanding prohibitions" are found in 18 U.S.C. § 922(g). Section 922(g) bars gun ownership by felons, fugitives, drug abusers, those adjudicated to be mentally ill, illegal aliens, those dishonorably discharged from the military, those who have renounced U.S. citizenship, and convicted domestic abusers or others subject to domestic violence restraining orders. *See* 18 U.S.C. § 922(g)(1)–(8).

Notwithstanding the Supreme Court's assurances in *Heller* and *McDonald*, the constitutionality of section 922(g) has been challenged repeatedly. *See*, *e.g.*, *Medina v. Whitaker*, No. 17-5248, 2019 U.S. App. LEXIS 1681, at *5 (D.C. Cir. Jan. 18, 2019) (listing the outcomes of certain facial and as-applied challenges to section 922(g)(1) in circuits that have considered the issue). "However, the Supreme Court 'has not yet heard an as-applied challenge to a presumptively lawful ban on firearms possession.'" *King v. Sessions*, No. 17-884, 2018 U.S. Dist. LEXIS 100501, at *6–7 (E.D. Pa. June 15, 2018) (quoting *Binderup v. Att'y Gen.*, 836 F.3d 336, 359 (3d Cir. 2016) (*en banc*), *cert. denied sub nom. Sessions v. Binderup*, 137 S. Ct. 2323 (2017)). Here, in this circuit, the United States Court of Appeals for the Third Circuit considered the application of section 922(g)(1) as applied to two individuals convicted of state misdemeanors in *Binderup v. Attorney General*.

Sitting *en banc*, the Third Circuit Court of Appeals held that section 922(g)(1) violated the Second Amendment as applied to those individuals based on different triggering state law

offenses.[5] *Binderup*, 836 F.3d at 340–41. Its fractured decision consists of an opinion, concurrence, and dissent.

The Third Circuit Court of Appeals' decision has led to other as-applied challenges to section 922(g) in this circuit. Numerous district courts in this district and circuit have surveyed relevant authority and addressed similar challenges. Many of these opinions considered other state law offenses that triggered section 922(g)(1) and presented analyses similar to the analysis in *Binderup*.[6] Others considered whether section 922(g)(4)'s restriction of a person's ability to possess a firearm when that person has been "committed to a mental institution" violated the Second Amendment as applied.[7] Others considered whether federal felony convictions that triggered section 922(g)(1)'s bar violated the Second Amendment as applied.[8]

This case falls into the latter. Here, Folajtar contends section 922(g)(1)'s prohibition triggered by her federal felony conviction violates the Second Amendment as applied. The Court analyzes her claim using the two-step burden shifting analysis previously articulated in *Marzzarella*.

---

[5] Fifteen judges on the United States Court of Appeals for the Third Circuit took part in deciding *Binderup* during the *en banc* appeal. Circuit Judges Ambro, Hardiman (Concurring), and Fuentes (Dissenting) wrote opinions, but none collected a precedential majority.

[6] *See Miller v. Sessions*, No. 17-cv-2627, 2019 U.S. Dist. LEXIS 16864 (E.D. Pa. Feb. 4, 2019); *United States v. Brooks*, 341 F. Supp. 3d 566 (W.D. Pa. 2018); *Gurten v. Sessions*, 295 F. Supp. 3d 511 (E.D. Pa. 2018); *Holloway v. Sessions*, No. 17-cv-81, 2018 U.S. Dist. LEXIS 168996 (M.D. Pa. Sep. 28, 2018); *Clark v. Sessions*, 336 F. Supp. 3d 535 (W.D. Pa. 2018); *Zedonis v. Lynch*, 233 F. Supp. 3d 417 (M.D. Pa. 2017).

[7] *See Keyes v. Sessions*, 282 F. Supp. 3d 858 (M.D. Pa. 2017); *Jefferies v. Sessions*, 278 F. Supp. 3d 831 (E.D. Pa. 2017); *Simpson v. Sessions*, No. 16-cv-1334, 2017 U.S. Dist. LEXIS 71109 (E.D. Pa. May 9, 2017); *Franklin v. Sessions*, 291 F. Supp. 3d 705 (W.D. Pa. 2017).

[8] *See King*, 2018 U.S. Dist. LEXIS 100501; *Tripodi v. Sessions*, 339 F. Supp. 3d 458 (E.D. Pa. 2018).

**B. The *Marzzarella* Framework for As-Applied Second Amendment Challenges**

The narrowest ground supporting the United States Court of Appeals for the Third Circuit's fractured vote in *Binderup* held that as-applied Second Amendment challenges were cognizable and controlled by a two-step burden shifting analysis previously articulated in *Marzzarella*. *Binderup v. Att'y Gen.*, 836 F.3d at 339 (citing *United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)); *see also United States v. Brooks*, No. 17-cv-250, 2018 U.S. Dist. LEXIS 87591, at *7 (W.D. Pa. May 24, 2018) (providing an overview of the background, opinions, and framework from *Binderup*). The Third Circuit Court of Appeals also recognized that its decision in *United States v. Barton*, 633 F.3d 168 (3d Cir. 2011) guided its analytical framework from *Marzzarella*. *Binderup*, 836 F.3d at 346. "Read together, *Marzzarella* and *Barton* lay out a framework for deciding as-applied challenges to gun regulations." *Id.*

At step one of *Marzzarella*'s framework, Folajtar bears the burden of showing that a presumptively lawful regulation burdens her Second Amendment rights. Doing so requires that she clear two hurdles: "(1) identify the traditional justifications for excluding from Second Amendment protections the class of which [she] appears to be a member, and then (2) present facts about [herself] and [her] background that distinguish [her] circumstances from those of persons in the historically barred class." *Id.* at 346–47 (internal citations omitted). "Not only is the burden on the challenger to rebut the presumptive lawfulness of the exclusion at *Marzzarella*'s step one, but the challenger's showing must also be strong. That's no small task." *Id.* at 347. Summed up concisely, after *Binderup,* Folajtar must prove that she did not previously commit a serious crime. *Id.* at 349 ("The takeaway: persons who have committed serious crimes forfeit the right to possess firearms much the way they 'forfeit other civil liberties, including

fundamental constitutional rights.'" quoting *Barton*, 633 F.3d at 175); *see also Tripodi v. Sessions*, 339 F. Supp. 3d 458, 464 (E.D. Pa. 2018).

Only if Folajtar distinguishes her disqualifying federal conviction from "serious crimes" at step one, does the burden under *Marzzarella* then shift to the Government at step two to show the regulation as applied satisfies intermediate scrutiny. *Binderup*, 836 F.3d at 356. At this step, the Third Circuit Court of Appeals instructed courts to determine "whether the Government has made a strong enough case for disarming a person found after step one to be eligible to assert an as-applied challenge. This turns in part on the likelihood that the [c]hallenger[ ] will commit crimes in the future." *Id.* at 354 n.7.

Applying the *Marzzarella* framework, the Court finds that Folajtar's claim fails at the first step. Because Folajtar has not satisfied the factual grounds necessary to satisfy the first step, it is not necessary for the Court to consider step two.

### C. Applying the *Marzzarella* Framework

#### 1. Step One

At the first step of the *Marzzarella* framework, Folajtar must show that section 922(g)(1) burdens her Second Amendment rights. To do so, she must (1) identify the traditional justifications for excluding felons from Second Amendment protections, and then (2) present facts about herself that distinguish her circumstances from those of persons in the historically barred class. *Binderup*, 836 F.3d at 347.

Before addressing those two considerations, the Court addresses the threshold question of whether section 922(g)(1) burdens Folajtar's Second Amendment rights. The parties do not dispute Folajtar's federal conviction for filing a false tax return carried a maximum possible sentence of a fine up to $100,000, imprisonment for up to three years, or both, and as a result,

section 922(g)(1) bars her from possessing a firearm. Under *Heller* and *Marzzarella*, section 922(g)(1), which is presumptively lawful, "permissibly prohibits firearms possession by an individual such as [Folajtar] who has been convicted of a crime punishable by a term of imprisonment exceeding one year." *King*, 2018 U.S. Dist. LEXIS 100501, at *9 (citing 18 U.S.C. § 922(g)(1)).

    a. <u>Traditional Justification</u>

The justification for denying felons the right to keep and bear arms dates back to the Second Amendment's drafting. "[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens.'" *Binderup*, 836 F.3d at 389 (quoting *United States v. Yancey*, 621 F.3d 681, 684 (7th Cir. 2010)). Those who committed violent crimes—in which actual or attempted violence is an element—"undoubtedly qualify as 'unvirtuous citizens' who lack Second Amendment rights." *Id.* at 348. The category of "unvirtuous citizens" is broader than those who commit violent crimes, however, "it covers any person who has committed a serious criminal offense, violent or non-violent." *Id.* ("To the extent *Barton* suggests that people who commit serious crimes retain or regain their Second Amendment rights if they are not likely to commit a violent crime, 633 F.3d at 174, it is overruled.").

Thus, the traditional justifications for excluding felons from Second Amendment protections turn on whether an "unvirtuous citizen" committed a "serious crime," not whether the crime was violent or non-violent. In *Binderup*, the United States Court of Appeals for the Third Circuit explained:

> The view that anyone who commits a serious crime loses the right to keep and bear arms dates back to our founding era. "*Heller* identified . . . as a 'highly influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their

Constituents." [*United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010)] (quoting *Heller*, 554 U.S. at 604). That report "asserted that citizens have a personal right to bear arms 'unless for crimes committed, or real danger of public injury.'" *Id.* (emphasis added) (quoting 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 662, 665 (1971)). "[C]rimes committed"—violent or not—were thus an independent ground for exclusion from the right to keep and bear arms. And there is reason to believe that felon disarmament has roots that are even more ancient. *See* [Don B. Kates, Jr., *Handgun Prohibition and the Original Meaning of the Second Amendment*, 82 Mich. L. Rev. 204, 266 (1983)] ("Felons simply did not fall within the benefits of the common law right to possess arms.").

The takeaway: persons who have committed serious crimes forfeit the right to possess firearms much the way they "forfeit other civil liberties, including fundamental constitutional rights." *Barton*, 633 F.3d at 175.

*Id.* at 349.

    b. <u>Application to Folajtar</u>

With that understanding of the traditional justification for denying felons Second Amendment protections, the Court's analysis shifts to consider whether Folajtar presents facts about herself that distinguish her circumstances from those of persons in the historically barred class (those who have committed serious crimes). Unlike *Binderup*, where the United States Court of Appeals for the Third Circuit analyzed whether certain state law convictions were serious enough to warrant statutory disqualification, the Court analyzes here whether a federal felony is a serious crime. The burden on Folajtar at this point in the analysis is "extraordinarily high." *See Binderup*, 836 F.3d at 353 n.6 ("On the one hand, it is possible to read *Heller* to leave open the possibility, however remote, of a successful as-applied challenge by someone convicted of [a disqualifying offense considered a felony by the authority that created the crime]. At the same time, even if that were so, the individual's burden would be extraordinarily high—and perhaps even insurmountable.").

"[T]here are no fixed criteria for determining whether crimes are serious enough to destroy Second Amendment rights." *Id.* at 351. Because "the category of serious crimes changes

over time as legislative judgments regarding virtue evolve" the United States Court of Appeals for the Third Circuit presumes "the judgment of the legislature is correct and treat[s] any crime subject to § 922(g)(1) as disqualifying unless there is a strong reason to do otherwise." *Id.* at 351. In addition to that presumption, the Third Circuit Court of Appeals considered the following other factors in *Binderup* to determine whether the state misdemeanors in question were serious: "(1) the statutory maximum penalty of the crime; (2) whether the crime is a misdemeanor; (3) whether use of force is an element of the crime;[9] (4) the sentence actually imposed upon the challenger; and (5) whether there is consensus among the states about the seriousness of the offense.[10]" *Clark v. Sessions*, 336 F. Supp. 3d 535, 542 (W.D. Pa. 2018) (citing *Binderup*, 836 F.3d at 351–53).

Folajtar argues that she can distinguish herself from the class of individuals historically barred. She compares her federal felony conviction with those state law misdemeanor convictions in *Binderup*. In *Binderup*, one challenger was convicted under Pennsylvania law for corrupting a minor, and the other challenger was convicted under Maryland law for carrying a handgun without a license. *Binderup*, 836 F.3d at 340. Both of these crimes were nonviolent misdemeanors. *Id.* at 375. They were excluded from the right to bear arms because the crimes meet the generic definition of a felony and Congress's definition of a felony for purposes of section 922(g)(1). Folajtar argues that her crime of filing a false tax return "is hardly in the same league" as to those crimes in *Binderup*. Pl.'s Br. Opp'n 9, ECF No. 5. She contends that the

---

[9] Although, as explained above, a non-violent crime can be serious, in *Binderup*, the United States Court of Appeals for the Third Circuit explained that "the lack of a violence element is a relevant consideration." *Binderup v. Att'y Gen.*, 836 F.3d at 352.

[10] Addressing this factor in *Binderup* was necessary because the crimes in question were state law convictions. Because the crime in question here, filing a false tax return, is a federal crime, this factor is inapplicable.

nature of her crime, the total maximum sentence possibility and the sentence she received, and a cross-jurisdictional consensus all weigh in favor of a showing that her felony was not a serious offense. *Id.* at 9–11.

This Court is not persuaded by Folajtar's argument. Although she argues that the conduct of her federal felony conviction is different than those state law misdemeanors, the *Binderup* factors, in addition to the judgment of Congress in labeling this crime as a felony, weigh in favor of treating her federal felony conviction as a serious crime The Court considered that: (1) the statutory maximum penalty for filing a false tax return is a fine up to $100,000 and imprisonment for up to three years, 26 U.S.C. § 7206(1); (2) Congress labeled this crime a felony, § 7206; (3) the elements for filing a false tax return do not include the use or attempted use of force; (4) and, the sentence Judge Gardner imposed included three years' probation, of which three months were on home confinement with an electronic monitoring device, and a $10,000 fine. The Court did not consider the cross-jurisdictional consensus because it considers that factor relevant only when the challenge involves a state-law misdemeanant. These factors differentiate Folajtar's federal felony conviction from those state law misdemeanors in *Binderup*.

Because the factors here weigh in favor of treating Folajtar's federal conviction as a serious crime, Folajtar does not satisfy her high burden of distinguishing herself from other felons historically excluded from the right to bear arms. *See Binderup*, 836 F.3d at 347 ("Not only is the burden on the challenger to rebut the presumptive lawfulness of the exclusion at *Marzzarella*'s step one, but the challenger's showing must also be strong. That's no small task."). Therefore, her claim will be dismissed.[11]

---

[11] As Folajtar has not satisfied the factual grounds necessary to satisfy the first step under the *Marzzarella* framework, it is not necessary for the Court to consider step two.

## V. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge